UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JULIO EARL FRANCIS,

    Petitioner,

v.                                                 CASE NO. 6:06-cv-625-Orl-22GJK

JAMES MCDONOUGH, et al.,

    Respondents.

## **ORDER**

Petitioner filed a petition for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Respondents filed a response (Doc. No. 6) to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts*. Petitioner filed a reply (Doc. No. 15) to the response.

*I.     Procedural History*

Petitioner was charged by indictment with first degree murder (count one) and shooting into a building or vehicle (count two). Pursuant to a written plea agreement, he entered a plea of guilty to the lesser included charge of second degree murder and the State nolle prossed count two of the indictment. After conducting a sentencing hearing, the state trial court sentenced Petitioner to life in prison. The conviction and sentence were affirmed on direct appeal. *Francis v. State*, 874 So. 2d 594 (Fla. 5th DCA 2004).

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief, which the state trial court denied. The appellate court affirmed the denial per curiam. *Francis v. State*, 912 So. 2d 1244 (Fla. 5th DCA 2005).

## II. Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d 1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United States Supreme Court precedent "in existence at the time the conviction became final"), *cert. denied*, 127 S.Ct. 1126 (2007).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005), *cert. denied*, 127 S. Ct. 348 (2006). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id*.

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.     *Standard for Ineffective Assistance of Counsel*

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the United States Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id*. at 58. The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the *Strickland* test requires that the defendant demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id*. at 688. The second prong of the *Strickland* test requires the defendant to show that the deficient performance prejudiced the defense.[1] *Id*. at 687. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. *Id*. at 689-90.

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

---

[1] In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59 (footnote omitted).

4

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## III.   Petitioner's Claims

Petitioner alleges four claims that he received ineffective assistance of counsel: first, that his counsel failed to inform him of the potential adverse effects of the victim's family giving emotional testimony at the sentencing hearing; second, that counsel advised him "that he was familiar with the judge who would be presiding in Petitioner's case and did not believe that the judge would give the Petitioner more than twenty-five (25) years based upon the Petitioner's age, family background, no prior record, Petitioner's willingness to help the State, and Petitioner's remorse for the death of the victim," (Doc. No. 1 at 7(b)); third, that defense counsel failed to inform Petitioner of the potential defense of lack of intent; and fourth, that defense counsel misrepresented the law regarding lesser-included offenses to first-degree premeditated murder.

Petitioner raised all four claims in his Rule 3.850 motion. The state trial judge rejected each of the claims on the merits, *see* App. F, and the appellate court *per curiam* affirmed.

### A. *Claims One and Two*

As to the first two claims, the state trial court found that Petitioner was fully aware of the potential sentence he faced and the relevant factors the court would consider. In addition, the court concluded that Petitioner entered the plea freely, voluntarily, and intelligently. After reviewing the plea agreement and plea hearing, this Court concurs.

Petitioner entered into a written plea agreement which stated that he would plead guilty to second degree murder and that the offense carried a maximum sentence of life with a mandatory minimum of twenty-five years. (App. A at 3.) In addition, the agreement provided that he would be sentenced "as attached in March 12, 2003 letter of Assistant State Attorney Jack Kaleita." *Id*. The Court notes that Mr. Kaleita's letter is not attached to the plea agreement included in the instant record.

During the plea hearing, however, the deal set forth in the letter is referenced by defense counsel:

> Negotiations with the prosecution were that Mr. Francis could either opt to plea to the Court in [an] open plea, with the understanding that there would be a minimum of a twenty-five year prison sentence with a firearm charge, and a maximum of life, or in the alternative plea to a thirty year sentence with a twenty-five year minimum mandatory. Mr. Francis has opted to plea to the first, which is the minimum twenty-five year sentence, with the Court's discretion as far as the term of the years connected with that anything above the twenty-five years.

(App. B at 29.)  The state trial judge reiterated the conditions of the deal to Petitioner, emphasizing the fact that Petitioner was facing a sentence of at least twenty-five years up to a maximum of life. *Id*. at 33-34.  Petitioner, under oath, confirmed that he understood the possible sentence he could receive and that he was not made any other promises:

> THE COURT: Aside from what we discussed about a minimum sentence of twenty-five years, has anyone promised you anything else?
>
> MR. FRANCIS: No, sir.
>
> THE COURT: Has anyone told you Judge Stephenson would go easy on you if you enter this plea?
>
> MR. FRANCIS: No, sir.
>
> THE COURT: Do you understand that I'm not bound, I don't believe, at this point, to twenty-five years?  Or is that part of the agreement?
>
> [DEFENSE COUNSEL]: No, the understanding is that the Court is – it's an open sentence, and the Court is free to sentence within that range we specified.
>
> THE COURT: Thank you.
> Do you understand, sir, that I could sentence you to a lot longer?
>
> MR. FRANCIS: Yes, sir.
>
> THE COURT: Up to life in prison, do you understand that?
>
> MR. FRANCIS: Yes, sir.
>
> THE COURT: And knowing all that, are you still wanting to enter a plea of guilty to second degree murder?
>
> MR. FRANCIS: Yes, sir.

(App. B at 36-37.)

Clearly, Petitioner and counsel made a decision to enter an open plea to the Court in hopes of securing a twenty-five year sentence, rather than entering a plea to the set thirty-year term. *See* App. A at 75 (defense counsel states that the only reason Petitioner entered the open plea was so the trial court "could have the consideration of hearing what happened and then determine . . . whether or not [to] sentence [Petitioner] to less than the thirty years up to the minimum mandatory. So we're really talking about a five year time frame of why we did what we did."). In hindsight, the set term plea would have been more advantageous, but this is not a basis for granting federal habeas relief. Petitioner clearly understood the risk inherent in his open plea. His first two claims reflect nothing more than dissatisfaction with the gamble he chose to take. Relief must be denied.

**B.    *Claim Three***

Petitioner argues that defense counsel failed to inform him of the potential defense of lack of intent. In rejecting this claim, the state trial court found that "[s]econd-degree murder requires an act of imminent danger or depraved mind. The Defendant accepted a factual basis indicating this level of intent. The lack of intent would not benefit the Defendant on a charge of second-degree murder; it would only allow the jury to reduce the first-degree murder charge to second-degree murder, leaving the Defendant in the same position." (App. F at 55.)

Clearly, Petitioner cannot satisfy the prejudice requirement. Even if he had rejected the plea and proceeded to trial, lack of intent only had the potential of reducing the first-degree murder charge to second-degree murder, the offense to which he pled guilty.

Furthermore, counsel was well-aware of Petitioner's position that he did not intend to harm the victim. In fact, counsel presented the testimony of a neuropsychologist at sentencing to establish that Petitioner could not have intended to harm the victim . (App. A at 58-70.) This claim must fail.

*C.     Claim Four*

Petitioner contends that defense counsel misrepresented the law regarding lesser-included offenses to first-degree premeditated murder. Petitioner does not specify what misrepresentations counsel made or how his case was impacted.

Petitioner's allegations are vague and conclusory and are inadequate as a matter of law to raise a cognizable claim of ineffective assistance of counsel. *See United States v. Cranshaw*, 817 F. Supp. 723, 728 (N.D. Ill. 1993), *aff'd without opinion*, 23 F.3d 410 (7th Cir. 1994). Petitioner "must identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *See United States v. Moya-Gomez*, 860 F.2d 706, 764 (7th Cir. 1988). In the present case, Petitioner's bald assertions are inadequate to overcome the presumption that counsel acted reasonably. *Matura v. United States*, 875 F. Supp. 235, 237 (S.D.N.Y. 1995).

*IV.    Conclusion*

The Court finds that trial counsel's conduct was reasonable and Petitioner has not shown prejudice. Certainly, Petitioner has not demonstrated, and this Court is unable to conclude, that the state court's decision was either "contrary to" or an "unreasonable application of" *Strickland*. Moreover, Petitioner has not demonstrated that the state court

made an unreasonable determination of the facts in light of the evidence presented. Petitioner's claims must be denied pursuant to section 2254(d).

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. No. 1) filed by Julio Earl Francis is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment accordingly is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 19th day of March, 2008.

Copies to:
sa 3/19
Counsel of Record
Julio Earl Francis

ANNE C. CONWAY
United States District Judge